## Union Trust Company v. McCarthy.

*Judgments—Name of defendant—Correction—Scire facias—Lien—When effective.*

A judgment entered against James McCarthy is not a lien against property held by defendant in the name of James J. McCarthy, and where a *scire facias* is issued for the purpose of correcting the name, the judgment becomes a new one as to James J. McCarthy and becomes a lien only after judgment is entered on the *scire facias* and not as of the date of issuing the *scire facias*.

Exceptions to sheriff's schedule of distribution. C. P. Westmoreland Co., Aug. T., 1926, No. 87.

*Marker & Rial,* for exceptant; *C. C. Walthour,* contra.

COPELAND, P. J., April 29, 1927.—The property of the defendant was sold by the sheriff on the *fieri facias* at the above number and term and a schedule of distribution was filed by him on Sept. 14, 1926, to which certain exceptions were filed. Just one question arises out of these exceptions to the sheriff's distribution, and that is whether a lien is given priority by reason of the issuing of a *scire facias* upon a judgment or from the date that judgment is taken on the *scire facias*; or, in other words, does the lien date from the issuing of the *scire facias* on a judgment or from the date judgment is taken on the *scire facias?*

The Safe Deposit & Trust Company entered judgments against James McCarthy at No. 193, November Term, 1925, on Sept. 16, 1925, in the sum of $416, and at No. 194, November Term, 1925, on the same date, in the sum of $787. The Merchants Trust Company of Greensburg entered judgment against James McCarthy at No. 305, November Term, 1925, in the sum of $1755, and on Feb. 10, 1926, issued a *scire facias* to No. 78, May Term, 1926, against James McCarthy, *alias dictus* James J. McCarthy. On Feb. 12, 1926, the Safe Deposit & Trust Company issued a *scire facias* on the judgment entered at No. 193, November Term, 1925, at No. 202, May Term, 1926, against James McCarthy and James J. McCarthy, and on the same day likewise issued a *scire facias* on the judgment entered at No. 194, May Term, 1925, to No. 203, May Term, 1926, against James McCarthy and James J. McCarthy.

At the time these judgments were entered, the record title to the property was in the name of James J. McCarthy, and it will be noticed that all these judgments originally were entered against James McCarthy.

In Stark v. Lamberton, 282 Pa. 219, the Supreme Court decided that where a judgment debtor has one Christian name, an index of the judgment by the initial of his Christian name followed by his family name is sufficient to bind the land of the defendant and establish the priority of the lien of the judgment. But where the judgment debtor has a middle name, the omission of the middle name is fatal.

This case was decided in 1925, after the judgments against James Mc-Carthy were entered, and caused the respective plaintiffs in the judgments involved in this case, before the court, which, as we said, were against James McCarthy, to issue *scire facias* so as to make these respective judgments liens on the property of James J. McCarthy, who was the same person as James McCarthy. When it came to the distribution, the sheriff awarded the fund for distribution to the respective judgments according to their priority in issuing the writ of *scire facias* to revive. This, the exceptant contends, is erroneous, and insists that the distribution of the funds in the sheriff's hands derived from the sale of James J. McCarthy's property should be made according to and as the judgments were secured against James J. McCarthy.

With this contention in the exceptions we quite agree, but we have had great difficulty in finding some authority in this State to back up our opinion in this respect, for the reason so little bearing, either directly or indirectly, upon the question with which we now are confronted has been said.

It is to be noticed from the record in this case that the writs of *scire facias* in these cases were not issued because the lien of judgments were about to expire, but were issued in order to bring the same person on record but in his right name.

We find in 24 Ruling Case Law, 666, this language:

"The writ of *scire facias*, so called from the use of these words therein, is a writ founded on some matter of record, as a recognizance or judgment, etc., on which it lies to obtain execution or for other purposes, as to repeal letters-patent, hear errors, etc. . . . The adoption of the common law of England by the several states of this country is generally considered to have included the right to pursue the remedy by *scire facias*, since the English statutes relating thereto were in force prior to the Revolution. . . .

"The writ of *scire facias* is used both as an original writ to obtain a judgment where none has before existed and as a writ in execution or continuation of a judgment previously entered. In the former case, it is clearly a new action, but in the latter, though it is attended with some of the qualities of an action, it is but a mode of obtaining execution in an action that has already terminated in a judgment. Thus it is generally held that a *scire facias* to revive a judgment is not an original process, but is merely a continuation of an action, a step in the enforcement of the original judgment."

We find in 3 Troubat & Haly Practice, 2513, this language: "The courts have a discretionary power to direct a *scire facias* to issue, by special order, in certain cases falling within the reason of the law on which this writ is founded."

On page 2512, we find:

"A *scire facias*, in our practice, is a writ, usually founded on some matter of record, as a recognizance or judgment, or on a mortgage or mechanic's lien (by act of assembly), though not a record, requiring the person against whom it issues to show cause why the plaintiff should not have advantage of such record, mortgage or lien. Although in some respects considered as a new action in regard to a record, because the defendant may plead thereto, and because a release of all actions or executions is a discharge to it, yet, in general, it is a judicial writ which, from its form and the nature of the proceedings under it, must issue from the court where the record remains. . . .

"Where the object of the *scire facias* is to obtain execution on a judgment or recognizance, etc., it is called a writ of execution; when issued against bail, against pledges in replevin, on a mortgage, mechanic's lien, to repeal letters-patent, or the like, it is, in fact, an original proceeding; but when issued to

revive a judgment, or upon the death, marriage or bankruptcy, etc., of parties, or on a judgment in debt on bond, or on a judgment *quando,* etc., against an executor, it is but a continuation of the original action."

In Scott et al. *v.* Waynesburg Brewing Co., 256 Pa. 158 (page 163), it is said: "The object in issuing the *scire facias* is not to obtain a new lien, but to continue an existing one. . . . The judgment on the *scire facias* is not, as the court erroneously supposes, a new judgment giving vitality only from that time, but it is the revival of the original judgment, giving, or rather continuing, the vitality of the original judgment, with all its incidents, from the time of its rendition. . . . In England, the judgment on the *scire facias* is that the original judgment be revived. Here, the amount of the debt is ascertained and judgment given for the sum due; and this unfortunate departure from precedents has given rise to the erroneous notion in the minds of some members of the profession that judgment on the *scire facias* is a new and distinct judgment and not, as it really is, nothing more than the revival of the original judgment, the sum being ascertained for which execution is issued. If we pay any regard to precedents, the execution ought always to be issued on the original judgment and not, as is sometimes ignorantly done, on the judgment on the *scire facias,* an irregularity which ought never to have been tolerated by the courts. But, notwithstanding this deviation from the usual practice, it has never yet been imagined that the law was fundamentally changed."

In Cathcart *v.* Potterfield, 5 Watts, 163, we find this language in the syllabus: "The period from which the lien of a judgment runs is not from the return of the *scire facias,* but from the date of the judgment of revival."

And in a *per curiam* opinion in that case, it was said: "The point in contest was determined in the case of Meason's Estate, 4 Watts, 341, where it was held that the period of five years runs not from the return of the *scire facias,* but from the judgment of revival—a decision that rules the point raised here."

From the decision in Stark *v.* Lamberton, 282 Pa. 219, it can safely be said that the entry of a judgment against James McCarthy alone did not make the lien of that judgment against the property of James J. McCarthy, and that the only way a lien could be had against the property of James J. McCarthy would be by entering a judgment against him or by issuing a *scire facias* on the judgment already entered, naming James J. McCarthy along with James McCarthy, being one and the same person, and after the service of that *scire facias* and after judgment had been taken upon it. The issuing of a *scire facias* on the judgments to which we heretofore have referred was not to continue an old lien of a judgment against James McCarthy, but it was to get a judgment against James J. McCarthy, and, therefore, it must follow that a judgment against James J. McCarthy was not had until it was taken on the *scire facias.* It would have been an entirely different thing if the *scire facias* had been issued against James McCarthy to revive or keep alive a judgment already against him. Then the lien would have dated back from the date of the original judgment if the *scire facias* were followed to a judgment. But if there was no lien against James J. McCarthy, the mere issuing of a *scire facias* mentioning his name did not create a judgment on his property. The only way that a valid lien was created against his property was when the judgment was taken on the *scire facias* which brought him into court. From this view of the case, it readily is to be seen that the funds in the hands of the sheriff shall be distributed in accordance with the priority of the mortgages and judgments against James J. McCarthy as originally entered and in

Union Trust Company v. McCarthy.

accordance with the priority of the dates of the judgments as taken on the *scire facias* issued on judgments entered against James McCarthy.

And now, to wit, April 29, 1927, after argument and after due and careful consideration, it is ordered, adjudged and decreed that the exceptions filed on Sept. 24, 1926, by F. Murray Campbell, the use-plaintiff, in the judgments in this court to No. 193, November Term, 1925, and No. 194, November Term, 1925, be, and the same hereby are, sustained, and the sheriff is directed to make distribution of the funds realized from the sale of the property of James J. McCarthy, now in his hands, in accordance with this opinion and decree, and that the costs of these proceedings be paid out of the funds in his hands in this case.          From William S. Rial, Greensburg, Pa.